**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Weston J. Stow

    v.                                    Civil No. 18-cv-768-JL

Dr. Anne Davis et al.[1]


**REPORT AND RECOMMENDATION**


Plaintiff Weston Stow, an inmate in the custody of the New Hampshire Department of Corrections ("DOC"), has filed this action, pursuant to 42 U.S.C. § 1983, asserting that the defendant DOC officials have violated his rights under the federal constitution and state law.  The complaint is before the court for preliminary review, pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A(a) and LR 4.3(d)(1).


**Preliminary Review Standard**

The court conducts a preliminary review of prisoner complaints.  See 28 U.S.C. §§ 1915(e)(2); 1915A(a); LR 4.3(d)(1).  The court may dismiss some or all of the claims in a prisoner complaint if, among other things, the court lacks

---

[1]Plaintiff Weston Stow names, as defendants to this action: New Hampshire State Prison Education Department Principal Dr. Anne Davis, and Northern New Hampshire Correctional Facility Nurse George Corriveau.

jurisdiction, a defendant is immune from the relief sought, or the complaint fails to state a claim upon which relief may be granted.  See id.  In conducting its preliminary review, the court construes pro se complaints liberally.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam).  The complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief.'"  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).

**Background**

I.   Goodell Letter

On October 25, 2017, Stow wrote a letter to National Football League ("NFL") Commissioner Robert Goodell (the "Goodell letter") expressing his displeasure with the actions of professional football players who have elected not to stand up and place their hands over their hearts during the pregame playing of the national anthem.  In the letter, Stow stated that any such a player was a "punk," and that "if [those] players do not want to appreciate or love America, embrace our strengths, commonalities, traditions, and work appropriately to right our wrongs, then they need to get the fuck out of my country . . . now!"  Compl., Ex. A (Doc. No. 1-5, at 3, 5).  In the Goodell

letter, Stow further opined that Goodell and NFL team owners who allowed such conduct were cowards, stating:

> There is a scene in the movie "Battleship" where the actor portraying himself, Army Lt. Col. Nick Conalus tells the tech guy ["]right now, your [sic] going to acquire courage or I'm going to stick this steel leg of mine up your ass – you feel me["] . . . well said! That message applys [sic] to you Commissioner, only it will be the public that sticks a negative balance sheet up your ass.

Id. at 4.

Stow states that at the time he wrote the Goodell letter, he was planning to file a pro se civil lawsuit against the NFL, Goodell, and New England Patriots owner Robert Kraft, for allowing players to kneel or protest during the national anthem. Stow asserts that the letter was written in preparation of filing that lawsuit, and therefore, constitutes his attorney work-product.

Prior to mailing the Goodell letter, Stow asked Northern New Hampshire Correctional Facility ("NCF") Case Counselor/Case Manager Snyder, who was filling in for the NCF law librarian, to make him a photocopy of the letter and its attachments.  Snyder made the copies but wasn't sure if prison policy allowed Stow to possess the copies.  Snyder therefore called John Perkins, the librarian at the New Hampshire State Prison ("NHSP"), for guidance.  Perkins told Snyder to send him the materials for

3

review.  Snyder returned the original documents to Stow and sent
copies to the NHSP.

The letters ended up with NHSP Education Department
Principal Dr. Anne Davis for review.  On October 31, 2017, Davis
wrote a disciplinary report against Stow, charging him with
threatening to harm another person or property in the Goodell
letter, in violation of the DOC rules governing prisoner
conduct.  The October 31, 2017 disciplinary report was
ultimately filed without prejudice to Stow.  Because there was
no guilty finding, no sanctions were imposed.

Stow followed up with Perkins by sending him an Inmate
Request Slip ("IRS").  In response, Perkins told Stow that he
did not have Stow's materials.  In answer to a subsequent IRS,
Perkins advised Stow that the copies sent to the NHSP went to
the Investigations office at that facility.  When Stow wrote to
Investigations to follow up, that office responded that it did
not have any materials related to Stow.  Between October 31,
2017 and December 18, 2017, Stow wrote a number of IRSs to
Perkins, Snyder, Davis, and Investigations, expressing
disagreement with their actions in seizing his letter and
charging him with disciplinary violations, but was dissatisfied
with the answers he received.  Stow asserts that the recipients

of his IRSs are required by prison policy to answer all of his
requests and questions, but failed to do that.

On December 27, 2017, Davis wrote a disciplinary report
charging Stow with "insubordination or disrespect toward a staff
member," in violation of DOC Disciplinary Rule 14.  DOC Policy
and Procedure Directive ("PPD") 5.25, Attach. 2, Disciplinary
Rule Infraction 14 (Doc. No. 1-5, at 27) ("Rule 14").
Specifically, Davis's disciplinary report states:

> Mr. Weston Stow continues to write disrespectful and
> condescending inmate request slips to both myself and
> Mr. Perkins (librarian).  Examples . . . include:
> "NCF, madam is not a who but rather a place.  You have
> a Phd; I thought you would know this." . . . Mr.
> Stow's IRS slip dated 12/18/17 is 6 pages of demands
> and promises to have me (and Mr. Perkins) fired and to
> take us to court.  Examples: "it is my opinion and
> observation that both [Davis's] and state employee
> John Perkins (sic) numerous IRS replys (sic) reek with
> arrogant attitude."  "When your (sic) both before the
> court, it is my opinion, you both will not be so smug.
> The judge and possible jury will have an opportunity
> to review your recalcitrant behavior." . . .  The 6
> page IRS is disrespectful and accusatory.  He has
> accused me and Mr. Perkins of making false official
> statements.  He has, twice now, demanded that I
> terminate Mr. Perkins, and that I will have my
> employment terminated . . . "The law demands your
> termination."  This is an abuse of the IRS system.
> His questions have been answered.  He doesn't seem to
> accept the answers and is using the IRS system to be
> verbally abusive to myself and Mr. Perkins.  Page 4
> [of Stow's IRS] . . . refers to a discipline report I
> wrote which Mr. Stow claims "your choice to write a D-
> rpt under those circumstances was nonsensical +
> absurd[,]" . . . and "Your actions and behavior in my
> opinion would be laughable." . . .

Compl., Ex. U, Dec. 27, 2017 DOC Disciplinary Report (Doc. No.
1-5, at 34). Davis's December 27, 2017 disciplinary report was
eventually filed without prejudice to Stow. Accordingly, there
was no finding of guilt and no punishment was imposed in
relation to that report.


II. Refusal to Take Partial Medication Dose

On January 11, 2018, NCF Nurse George Corriveau gave Stow a
6 mg Coumadin pill and a 1 mg Coumadin pill.[2] Stow had been
taking a daily dose of 6 mg of Coumadin for several months. As
Stow had received no notice that his dosage had changed, he took
the 6 mg pill and declined to take the 1 mg pill.

Corriveau told Stow he had to take the full dosage, and
that he would write a disciplinary report against Stow if he
refused to do so. Stow refused to take the full dose, and later
that day, Corriveau wrote a disciplinary report charging Stow
with "possession/use of prescribed medication contrary to
instructions of authorized medical personnel," in violation of
DOC Disciplinary Rule 29. PPD 5.25, Attach. 2, Disciplinary
Rule Infraction 29 (Doc. No. 1-5, at 27) ("Rule 29").

---

[2]"Coumadin . . . is an anticoagulant (blood thinner).
[Coumadin] reduces the formation of blood clots. Drugs.com,
https://www.drugs.com/coumadin.html (last visited Aug. 9, 2019).

Upon investigation of the January 11, 2018 disciplinary report, prison officials determined that "[Inmate] Stow's meds were changed without his knowledge.  [Inmate] Stow's dose was changed back to 6 mg."  Compl., Ex. W, Jan. 11, 2018 Disciplinary Report (Doc. No. 1-5 at 37).  The disciplinary report was handled as an "Incident Report" and, consequently, no guilty finding was made and no punishment was imposed.  See id.

**Claims**

Seeking declaratory relief and damages, Stow asserts the following claims in this action:

1.   On October 31, 2017, Dr. Anne Davis read a copy of Stow's outgoing letter to Roger Goodell, improperly characterized it as threatening, and issued a disciplinary report against Stow, in violation of:

   a.   Stow's First Amendment right to free speech;

   b.   Stow's First Amendment right not to be subjected to retaliatory disciplinary action for exercising his right to free speech;[3]

   c.   Prison policies;

   d.   The work-product privilege, to the extent the Goodell letter was being sent in preparation for a potential lawsuit against the NFL and Goodell; and

---

[3]In his complaint, Stow states that he is not asserting a retaliation claim in this action.  His assertions that Davis improperly subjected him to adverse consequences in response to his exercise of his rights to free speech and to petition the government for a redress of grievances, are actionable, if at all, as First Amendment retaliation claims.

e.   State law, rendering Dr. Davis liable for: negligence per se, malfeasance and misfeasance in public office, common law obstruction of justice, and fraudulent misrepresentation.

2.   On December 27, 2017, Dr. Anne Davis issued a disciplinary report against Stow for insubordination/disrespect toward a staff member, in regard to statements Stow made in IRSs sent to Dr. Davis and John Perkins, in violation of:

a.   Stow's First Amendment right to free speech;

b.   Stow's First Amendment right not to be subjected to retaliatory disciplinary action for exercising his First Amendment rights to free speech and to petition for redress of grievances;

c.   Stow's First Amendment right to meaningfully access the courts;

d.   Stow's Fourteenth Amendment right to due process, as the disciplinary rule on which the disciplinary report was based is vague and overbroad, both facially and as applied to Stow, and thus denied Stow fair notice of what conduct might subject him to disciplinary proceedings and punishment;

e.   Prison policies; and

f.   State law, rendering Dr. Davis liable for: negligence per se; malfeasance and misfeasance in public office; intentional interference with contractual relations; dereliction of duty; and failure to obey a written order, regulation, or directive of a supervisory authority;

3.   Dr. Anne Davis failed to truthfully answer all or part of Stow's multiple IRS forms directed to Dr. Davis between October 31, 2017 and December 27, 2018, in violation of:

a.   Prison policies; and

      b.   State law, rendering Dr. Davis liable for: negligence per se; malfeasance and misfeasance in public office; common law obstruction of justice; intentional interference with contractual relations; dereliction of duty; failure to obey a written order, regulation, or directive of a supervisory authority; making a false official statement; deceit; and/or intentional misrepresentation of facts;

4.   On January 11, 2018, NCF Nurse George Corriveau issued a disciplinary report against Stow for possession or use of prescribed medication contrary to the instructions of authorized medical personnel, in response to Stow's refusal to take the full dose of Coumadin offered to him, in violation of:

      a.   Stow's Fourteenth Amendment right to substantive due process, by subjecting Stow to disciplinary proceedings for exercising his right to refuse medication;

      b.   Prison policies; and

      c.   State law, rendering Nurse Corriveau liable for: negligence per se, malfeasance and misfeasance in public office, and intentional interference with contractual relations.

**Discussion**

I.   <u>First Amendment</u>

    A.   <u>First Amendment Rights in Prison</u>

Prison inmates retain First Amendment rights to the extent such rights are consistent with their status as prisoners and the legitimate penological objectives of the corrections system. See <u>Pell v. Procunier</u>, 417 U.S. 817, 822 (1974); <u>Jones v. N.C. Prisoners' Labor Union, Inc.</u>, 433 U.S. 119, 125 (1977) (although

9

a prisoner does not completely sacrifice his right to free speech, that right is necessarily diminished by his incarceration).  "The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives—including deterrence of crime, rehabilitation of prisoners, and institutional security." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987).

### B.    Censorship of Outgoing Mail (Claim 1(a))

"[A] prisoner's right to the free flow of incoming and outgoing mail is protected by the First Amendment." Davis v. Goord, 320 F.3d 346, 351 (2d Cir. 2003).  In balancing a prisoner's First Amendment interest in the free flow of his incoming and outgoing mail with the prison's interest in imposing a particular restriction on such mail, "courts have consistently afforded . . . greater protection to outgoing mail than to incoming mail." Id.  The standard applied to policies restricting outgoing mail involves two criteria:  (1) whether the regulations furthers an important or substantial governmental interest, unrelated to suppression of expression; and (2) whether the restriction on outgoing mail is no greater than necessary to the protection of the particular governmental

interest involved.  See Stow v. Grimaldi, 993 F.2d 1002, 1004, (1st Cir. 1993).

Stow has not directly claimed that Davis's actions in scanning the contents of his letter to Goodell for threats was a violation of his First Amendment right in regard to his outgoing mail.  Nor could he; he previously litigated and lost essentially the same claim.  See id. (inmate's First Amendment rights are not violated by inspection of contents of their outgoing mail, as necessary to determine whether they contain "proscribable matter"); see also Thornburgh v. Abbott, 490 U.S. 401, 412-13 (1989) ("[d]angerous outgoing correspondence" for which screening is permissible may include "escape plans, plans relating to ongoing criminal activity, and threats of blackmail or extortion" (citing, and overruling on other grounds, Procunier v. Martinez, 416 U.S. 396, 412-13 (1974)).

Stow alleges that Davis read the letter and then initiated disciplinary proceedings against him.  However, nothing in Stow's lengthy and detailed complaint indicates that Davis did anything to restrict Stow's ability to mail the letter itself, before or after she read it.  When Snyder withheld photocopies of the Goodell letter from Stow to send to officials in Concord, she returned the original to Stow.  Stow has not alleged that any prison official prevented him from mailing the original copy

of the letter out of the prison.  Accordingly, as the complaint does not allege facts to demonstrate that Davis's actions resulted in the diversion or restriction of Stow's letter to Goodell, and it is settled law that prison officials can scan letters to determine whether they contain threats, the district judge should dismiss the censorship claim, identified herein as Claim 1(a).

### C.    Retaliatory Disciplinary Actions (Claims 1(b), 2(b))

To state a First Amendment retaliation claim, an inmate must allege: (1) that the conduct which led to the retaliation was protected by the First Amendment; (2) that he suffered adverse action at the hands of a defendant prison official; and (3) that there was a causal link between the exercise of his First Amendment rights and the adverse action taken.  See Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011).  Although de minimis adverse acts taken in response to protected speech are not actionable, an adverse act is not de minimis if it would deter an individual of ordinary firmness from exercising his or her First Amendment rights.  See Starr v. Dube, 334 F. App'x 341, 342-43 (1st Cir. 2009) ("Starr II").  "[T]he filing of a single, later-dismissed disciplinary charge against an inmate, even if taken with a retaliatory motive, is insufficient to qualify as

12

more than de minimis." Pope v. Bernard, No. 10-1443, 2011 WL 478055, at *2, 2011 U.S. App. LEXIS 2764, at *4 (1st Cir. Feb. 10, 2011) (emphasis in original).

As to both the Goodell letter and the allegedly disrespectful IRSs Stow wrote, the only adverse act Stow alleges that Davis took against him was that, as to each, she initiated disciplinary proceedings against him by writing a disciplinary report.  In each case, Davis's report was dismissed without a guilty finding or any punishment.  Accordingly, Stow has not asserted a non-de minimis adverse act, taken in response to either his letter or IRS, sufficient to support a retaliation claim.  The district judge, therefore, should dismiss Stow's retaliation claims, identified here as Claims 1(b) and 2(b).

        D.    Disciplinary Report for Disrespect - Qualified
              Immunity (Claim 2(a))

Stow alleges, in the claim identified here as Claim 2(a), that his First Amendment rights were violated when Davis initiated disciplinary proceedings against him, for statements he made in IRSs directed to Davis and Perkins, which Davis perceived to be disrespectful.  As explained below, Davis is entitled to qualified immunity as to this claim, as there is no

clearly established First Amendment right to use disrespectful
language in IRS forms directed to prison officials.

A prison official is entitled to qualified immunity "when
[the official's] actions, though causing injury, did 'not
violate clearly established statutory or constitutional rights
of which a reasonable person would have known.'" Gray v.
Cummings, 917 F.3d 1, 10 (1st Cir. 2019) (citation omitted).
The qualified immunity doctrine protects "all but the plainly
incompetent or those who knowingly violate the law." Malley v.
Briggs, 475 U.S. 335, 341 (1986).  A court may dismiss a claim
on the basis of qualified immunity sua sponte if a complaint
"clearly show[s] that [plaintiff] would be unable to overcome
qualified immunity." Chavez v. Robinson, 817 F.3d 1162, 1168-69
(9th Cir. 2016), as amended on reh'g (Apr. 15, 2016).  Cf.
Redmond v. Fulwood, 859 F.3d 11, 13, (D.C. Cir. 2017)
("qualified immunity is a basis for dismissal of prisoner
complaints under 28 U.S.C. § 1915A" (citation omitted)).

In determining whether a defendant is entitled to qualified
immunity, the court "must decide (1) whether the facts alleged
or shown by the plaintiff make out a violation of a
constitutional right; and (2) if so, whether the right was
'clearly established' at the time of the defendant's alleged
violation." Rocket Learning, Inc. v. Rivera-Sánchez, 715 F.3d

14

1, 8 (1st Cir. 2013) (citations and internal quotation marks
omitted).  In appropriate cases, the court may forego
consideration of the first part of the inquiry and decide the
matter solely on the question of whether the right at issue was
"clearly established."  See Pearson v. Callahan, 555 U.S. 223,
236 (2009).

The "clearly established" part of the inquiry has two
prongs: (1) the clarity of the law "at the time of the alleged
violation"; and (2) the clarity of the law with respect to the
"specific facts of the case at bar." Rocket Learning, 715 F.3d
at 9.  The first prong's focus on the time of the alleged
violation means that precedent which existed at the time of the
alleged infraction must have "'placed the statutory or
constitutional question . . . beyond debate.'" Rivera-Corraliza
v. Morales, 794 F.3d 208, 215 (1st Cir. 2015) (citations
omitted).  In other words, the court must determine whether
"controlling authority" in the relevant jurisdiction, or — in
the absence of controlling law — a "robust consensus of
persuasive authority" existed, making the conduct unquestionably
illegal at the time of the alleged violation.  Id. at 214-15
(citations and internal quotation marks omitted).

The second prong of the "clearly established" inquiry
"considers the specific facts of the case at bar."  Rocket
Learning, 715 F.3d at 9.

> The "clearly established" inquiry "must be undertaken
> in light of the specific context of the case, not as a
> broad general proposition."  Thus, "[t]he relevant,
> dispositive inquiry in determining whether a right is
> clearly established is whether it would be clear to a
> reasonable [official] that his conduct was unlawful in
> the situation he confronted."

Id. (emphasis in original) (citations omitted).

The "clearly established" inquiry here is the following:
would it have been clear to a reasonable prison official in the
First Circuit in December 2017, that an inmate's IRS: (1)
characterizing a prison official's responses to previous IRSs as
"reek[ing] with arrogant attitude"; (2) labelling the official's
decision to charge the prisoner with a disciplinary report
"nonsensical," "absurd," and "laughable"; and (3) including
snide, extraneous remarks regarding the official's grammar, was
unsanctionable, protected speech?  Neither the First Circuit nor
the Supreme Court has addressed that question, or a
substantially similar question, directly.

In 2007, a judge in the District of New Hampshire observed,
in dicta, that "it appears likely that a prison disciplinary
rule banning insubordination and disrespect may be applied,
constitutionally, to written communications made during an

16

internal prison grievance process." Starr v. Dube, No. 05-cv-264-SM, 2007 DNH 153, 2007 WL 4320743, at *4, 2007 U.S. Dist. LEXIS 90430, at *9 (D.N.H. Dec. 7, 2007) ("Starr I"), aff'd, Starr II, 334 F. App'x at 341.  And in January 2017, another judge in this district found that a New Hampshire prison official was entitled to qualified immunity on an analogous First Amendment claim arising from disciplinary proceedings initiated in 2014.  See Peterson v. Wrenn, No. 14-CV-432-LM, 2017 DNH 018, 2017 WL 401189, at *9-*10, 2017 U.S. Dist. LEXIS 12225 at *30 (D.N.H. Jan. 30, 2017) ("A reasonable prison official within the First Circuit in 2014 could conclude that the First Amendment did not prevent a [corrections] officer from initiating disciplinary proceedings for an inmate's . . . questioning his integrity and truthfulness on a form used in the grievance process.").  The court in Peterson surveyed the law as it existed in 2014 and concluded that a line of Ninth Circuit cases supporting the plaintiff's position, did not reflect the "robust consensus of persuasive authority" that is needed to overcome a finding of qualified immunity.  Id., 2017 WL 401189, at *10, 2017 U.S. Dist. LEXIS 12225 at *29 (citing cases).

Peterson is apt precedent for Stow's case, as it concerns a disciplinary proceeding initiated in response to an inmate's use of language in an IRS that could be deemed to be disrespectful.

This court has been unable to identify any pertinent, new, or persuasive authority, concerning events occurring between 2014, when the Peterson court surveyed the law, and December 2017, that could alter the results of a "clearly established" inquiry with respect to Stow's claims.  A reasonable prison official within the First Circuit, in December 2017, could have concluded that the First Amendment did not shield from disciplinary consequences the disrespectful, condescending, or stray, snide remarks an inmate placed in an IRS.  The allegations in Stow's complaint do not show, therefore, that the illegality of Davis's actions, in writing the December 27, 2017 disciplinary report concerning Stow's allegedly disrespectful statements, set forth above, was beyond debate when and where it occurred.  Accordingly, Davis is entitled to qualified immunity on Claim 2(a), and the district judge should dismiss that claim.

E.    Access to the Courts (Claim 2(c))

Stow alleges that he was denied his right to freely access the courts because Davis's December 27, 2017 disciplinary report against him placed him in fear that he could be subject to retribution for statements he might make in future court filings.  To state a claim for a denial of access to the courts, an inmate must show, among other things, that a defendant has

hindered his ability to pursue a nonfrivolous claim that he has a right to litigate.  See Lewis v. Casey, 518 U.S. 343, 349-52 (1996).  Nothing in the complaint demonstrates that Stow has been hindered in his ability to pursue any non-frivolous legal claim in court.  Accordingly, the district judge should dismiss Stow's claim alleging that he was denied access to the courts, identified here as Claim 2(c).


II.  Violation of Work Product Privilege (Claim 1(d))

Stow states that the Goodell letter was protected "work product," as Stow was sending Goodell the letter in anticipation of, and in preparation for, a lawsuit he intended to file against Goodell and others.  Stow further claims that because the letter was protected by the work product doctrine, Davis's reading of the letter was unlawful.

> The work-product doctrine prevents certain attorney-
> prepared materials from becoming discoverable. . . . The
> doctrine protects "an attorney's ability to formulate legal
> theories and prepare cases," and prevents the parties from
> "freeloading" off each other's work.

Diaz v. Devlin, 327 F.R.D. 26, 29 (D. Mass. 2018).

Assuming, without deciding, that documents Stow prepares without an attorney's involvement could be deemed privileged "work product," neither the allegedly unauthorized disclosure nor Davis's reading of the Goodell letter give rise to an

19

actionable claim.  The Federal Rules of Civil Procedure and the
common law do not provide a cause of action against an
individual for reading someone else's work product.  The rules
about work product are discovery rules that apply in court cases
between the parties to those cases.  The district judge,
therefore, should dismiss Stow's claim based on an alleged
violation of the work-product privilege, identified here as
Claim 1(d).


III. <u>Fourteenth Amendment</u>

    A.    <u>Rule 14 – Vagueness and Overbreadth (Claim 2(d))</u>

Stow alleges that Rule 14, the DOC disciplinary offense of
being "insubordinate or disrespectful," is unconstitutionally
vague and overbroad, both on its face and as applied to Stow, as
it does not specifically advise inmates what conduct might
subject them to punishment.  Stow alleges here that Davis, by
charging Stow with a disciplinary violation under that
provision, for conduct she deemed to be disrespectful, violated
his due process rights.

Stow's facial and as-applied due process challenges to
disciplinary rules are only actionable to the extent he can
allege impingement of a protected liberty interest.  An inmate's
protected liberty interests are "limited to freedom from

restraint which, while not exceeding the sentence in such an
unexpected manner as to give rise to protection by the Due
Process Clause of its own force, nonetheless imposes atypical
and significant hardship on the inmate in relation to the
ordinary incidents of prison life." Sandin v. Conner, 515 U.S.
472, 484 (1995) (internal citations omitted).  Accordingly, Stow
has no federal due process right with regard to the December 27,
2017 disciplinary proceedings, as he was not subject to any
disciplinary finding or sanction, much less one that imposed an
"atypical and significant hardship" on him.  Id.

    Moreover, the regulation at issue here resembles similar
prison regulations that have been found to pass constitutional
scrutiny under the "void for vagueness" and overbreadth
doctrines.  See, e.g., Ustrak v. Fairman, 781 F.2d 573, 580 (7th
Cir. 1986) ("the concepts of vagueness and overbreadth have less
scope when applied to the regulation of the free speech" of
prisoners); cf. also Smith v. Campbell, No. CIV.A. 2:03CV973-ID,
2006 WL 2597837, at *2-*3, 2006 U.S. Dist. LEXIS 101590, at *6
(Aug. 23, 2006), R&R approved, 2006 U.S. Dist. LEXIS 64817, at
*1-*2 (M.D. Ala. Sept. 11, 2006) (statute is not
unconstitutionally vague if persons of reasonable intelligence
can derive a core meaning from the statute).  A reasonable
prisoner would understand that telling a prison official that

her IRS response "reek[ed] with arrogant attitude," and that her decision to charge the prisoner with a disciplinary report was "nonsensical," "absurd," and "laughable," and which includes snide and unnecessary comments regarding that staff member's grammatical errors, in what reasonably appears to be an effort by Stow to demonstrate intellectual superiority to that staff member, may be a sanctionable act of disrespect as to that official.  For these reasons, the district judge should dismiss Stow's claim based on vagueness and overbreadth challenges to Rule 14, identified here as Claim 2(d).

### B.    Violation of Substantive Due Process Right to Refuse Medication (Claim 4(a))

Stow alleges that Corriveau violated Stow's substantive due process rights by issuing a disciplinary report against Stow in response to Stow's exercise of his right to refuse medication. "[A] competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment." Cruzan v. Dir. of Mo. Dep't of Health, 497 U.S. 261, 278 (1990).  A prisoner's right to refuse medical treatment, however, "is not absolute and is particularly susceptible to regulation in the prison setting." Davis v. Agosto, 89 F. App'x 523, 528 (6th Cir. 2004).  "The proper standard for determining the validity

of a prison regulation claimed to infringe on an inmate's
constitutional rights is to ask whether the regulation is
'reasonably related to legitimate penological interests.'"
Washington v. Harper, 494 U.S. 210, 223 (1990) (quoting Turner
v. Safley, 482 U.S. 78, 89 (1987)).  Factors that may be
relevant to the court's determination are:

> (1) whether there is a valid, rational connection
> between the regulation and the legitimate government
> interest put forward to justify it; (2) whether
> alternative means to exercise the right exist; (3) the
> impact that accommodating the right will have on
> prison resources; and (4) the absence of alternative
> to the prison regulation.

Kuperman v. Wrenn, 645 F.3d 69, 74 (1st Cir. 2011) (citing
Turner, 482 U.S. at 89-90)).

Corriveau charged Stow with violating Rule 29, which
prohibits inmates from "[p]ossessing or use of prescribed
medication contrary to the instructions of authorized medical
personnel."  Rule 29.  Requiring inmates to take medications as
prescribed is rationally related to the legitimate penological
interest in prison security and the safety of both inmates and
prison employees, as it may prevent inmates from taking only
part of a dose of medication they are given, and then storing
the remainder, which can then be taken in high doses, or sold as
contraband.  Further, requiring an inmate to either refuse a
dose of medication altogether, or take all of the prescribed

23

dose does not prevent an inmate from exercising his or her right
to refuse medication; the entire dose may be refused without a
disciplinary consequence to the inmate.  Additionally, the rule
prohibiting inmates from picking and choosing how much of a
prescribed dose they want to take conserves limited prison
health care resources by allowing prison personnel who cannot
change an inmate's prescription to distribute the prescribed
doses.  And it helps channel the questions inmates may have
about their prescriptions to the health care providers who have
the training and authority both to provide advice and to change
the dosage, as appropriate.  These examples demonstrate that
Rule 29 is reasonably related to legitimate interests in the
security, health, and safety of prison inmates and staff, and is
not an exaggerated response to such concerns.

Accordingly, Corriveau's issuance of a disciplinary report
charging Stow with taking his prescribed medication "contrary to
the instructions of authorized medical personnel" did not
violate Stow's right to refuse medication in the prison setting.
Id.  The district judge should dismiss Stow's claim identified
here as Claim 4(a).


## IV.    Violations of Prison Policy (Claims 1(c), 2(e), 3(a), 4(b))

Stow asserts that his rights have been violated by the defendants' failure to follow DOC policies.  "An assertion that prison officials failed to follow prison rules or policies does not set forth a constitutional claim."  McFaul v. Valenzuela, 684 F.3d 564, 579 (5th Cir. 2012); see Querido v. Wall, C.A. No. 10-098 ML, 2010 U.S. Dist. LEXIS 139201, at *14, 2010 WL 5558915, at *3 (Dec. 8, 2010), R&R adopted, 2011 U.S. Dist. LEXIS 1882, 2011 WL 63503 (D.R.I. Jan. 7, 2011).  Further, the DOC policies governing the conduct of prison officials do not provide Stow with a private right of action for prison officials' violations of those policies.  Accordingly, Stow cannot state a claim for relief for the defendants' violation of prison policies, and the district judge should dismiss Stow's claims asserting such, identified here as Claims 1(c), 2(e), 3(a), and 4(b).

V.    <u>State Law Claims (Claims 1(e), 2(f), 3(b), 4(c))</u>

Stow asserts claims to relief under state law.  Because, as discussed above, Stow has failed to state a federal claim upon which relief might be granted in this matter, the district judge should decline to exercise supplemental jurisdiction over Stow's asserted state law claims relating to his asserted federal claims, and should dismiss those claims, identified here as

25

Claims 1(d), 2(f), 3(b), and 4(c), pursuant to 28 U.S.C. § 1367, without prejudice to Stow's ability to assert the state law claims in an action filed in state court.

## Conclusion

For the foregoing reasons, the district judge should dismiss the complaint (Doc. No. 1) in its entirety, without prejudice to Stow's ability to assert his claims arising under state law in state court.  Any objections to this Report and Recommendation must be filed within fourteen days of receipt of this notice.  See Fed. R. Civ. P. 72(b)(2).  The fourteen-day period may be extended upon motion.  Failure to file specific written objections to the Report and Recommendation within the specified time waives the right to appeal the district court's order.  See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016); Fed. R. Civ. P. 72(b)(2).

Andrea K. Johnstone
United States Magistrate Judge

August 12, 2019

cc:  Weston J. Stow, pro se